398 So.2d 1272 (1981)
Ethel WOOLRIDGE
v.
Gabe MOULEDOUX, XYZ Insurance Company, Carol Wallace and ABC Insurance Company et al.
No. 11840.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1981.
Bagot & Gniady, John H. Gniady, New Orleans, for plaintiff-appellant.
Young, McMahon & Levert, George J. Richaud, New Orleans, for defendants-appellees.
Before SAMUEL, GARRISON and BAILES, JJ.
BAILES, Judge.
Plaintiff-appellant, Ethel Woolridge, alleges that she was employed in the laundry facility of the Chateau de Notre Dame Nursing Home on August 9, 1978 where, by reason of an accumulation of a liquid substance on the floor, fell, thereby suffering an injury to her body. The named defendants are Gabe Mouledoux and Carol Wallace, both fellow employees of the plaintiff-appellant. Gabe Mouledoux is alleged to be the immediate superintendent and the other defendant, Carol Wallace, allegedly was the director of environmental services and executive housekeeper of the employer.
This action is what is known as an executive officers suit. The following allegations of the appellant's petition clearly delineates this action as such, namely:
* * * * * *
"The individual Defendants named in Paragraph I, at all times herein mentioned, were either officers, agents or employees of the Chateau de Notre Dame, which had a contractual duty to its employed labor force, including the Plaintiff herein, to provide her with a safe place to work, and was negligent in failing to do so in the following particulars:
"1. By failing to provide the means of safe access to a working area for the performance of the duties of its labor force employees.
"2. By failing to recognize and detect the defective unsafe condition and usage of the equipment and machinery required to be used by Plaintiff.
"3. By failing to report an unsafe equipment usage, and to stop the usage and to provide proper, safe washing equipment initially, and after actual and constructive knowledge of the dangerous condition of the equipment, and in failing to take steps necessary to rectify the hazardous condition of laundry equipment required to be used by the labor force employees.

*1273 "4. By performing make-shift repair work upon defective laundry equipment, thereby contributing to its unsafe conditions.
"5. By failing to provide to the labor force employees, required to work in and around the laundry equipment, floors which were of sufficient material to be water tight and free from dampness with adequate drains so that no water or other liquid substances may accumulate upon the surface of the floors by usage of the laundry equipment.
6. By failing to provide safe floor surfaces by means of false floors, platforms or mats or dry standing places in areas where wet processes are used by the members of the labor force employees utilizing the laundry machinery.
"7. By failing to maintain the laundry equipment in such a condition as to prevent the accumulation of water or other liquid substances upon the floor area of the laundry facility.
"8. By any other acts of active or passive negligence to be proved at the trial of this case."
Defendants, in addition to filing an answer, filed a peremptory exception of no cause of action and of no right of action. On the ground that the exclusive remedy of the plaintiff is under the Louisiana worker's compensation statute the trial court sustained the exception of no cause of action and dismissed the plaintiff's suit.
The applicable statute is R.S. 23:1032, as amended, which provides:
"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
"Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
"The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section."
The above quoted section excludes from its exclusiveness of rights and remedies of the injured employee the liability of the employer, or any officer, director, stockholder, partner or employee of the employer resulting from an intentional act.
Noticeably absent from the plaintiff's petition is any allegation that the plaintiff's injury was the result of any intentional act of the individual defendants. Under the recent case of Bazley v. Totorich, 397 So.2d 475 (La.1981) the Supreme Court has determined an intentional act as:
"* * * (W)e construe the legislation under review as providing that the exclusive remedy rule shall be inapplicable to intentional torts or offenses. The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did. * * *"
As shown by the above quoted allegations of plaintiff-appellant's petition, there is no allegation that the two named defendants intended to bring about the harm which plaintiff-appellant suffers or believed such result was substantially certain to follow *1274 from their alleged negligence; therefore, the petition is fatally defective in stating a cause of action.
Another issue presented is whether the suit should be dismissed as the trial court did, or should the plaintiff, under C.C.P. art. 934 be afforded the opportunity to amend to state a cause of action.
C.C.P. art. 934 states:
"When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed."
In Louisiana and Southern Life Ins. Co. v. New Orleans Steamship Association, International Longshoremen's Association (AF of LCIO) Welfare Plan, 384 So.2d 594 (La.App. 4th Cir. 1980), this court said on page 597 in commenting on the above-quoted C.C.P. art. 934:
"As a general rule the `shall' in the above article requires that the adverse party be given an opportunity to amend where there is a conceivable possibility that cause or right of action may be stated. Hodges v. LaSalle Parish Police Jury, 368 So.2d 1117 (La.App. 3rd Cir. 1979). However, the right to amend is not so absolute as to permit the same when such amendment would constitute a vain and useless act."
This reflects the jurisprudential rule. See also Perkins v. Desroches, 359 So.2d 323 (La.App. 4th Cir. 1978); writ denied 362 So.2d 578. Within the context of the allegations of plaintiff's petition and R.S. 23:1032, as amended, any intimation of intention on the part of defendants to harm the plaintiff is absent. Such an intention on the part of defendants, as defined by Bazley, is requisite for stating a course of action against them. Neither in brief nor in oral argument has the plaintiff contended that she can allege or prove that defendants intended to do physical harm to her, as defined by the statute and interpreted by Bazley.
Thus, we find that a remand for the purpose of affording the plaintiff an opportunity to allege a fact not contended to exist would be a vain and useless act.
Accordingly, the judgment of the trial court dismissing the action is affirmed at appellant's cost.
AFFIRMED.